# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Paul Luxama, | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    1:15cv1586 (CMH/JFA) |
| | )    Appeal No. 16-6830 |
| John McHugh, et al., | ) |
|    Defendants. | ) |

FILED JUL 16 2018 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Paul Luxama, a federal inmate proceeding pro se, has filed a civil action asserting claims related to his discharge from the Army. Construed liberally, this civil action is taken as bringing claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq., as well as a claim for wrongful discharge from the military.[1] Dkt. No. 1. By Order dated April 7, 2016, this matter was dismissed without prejudice. Dkt. No. 10. By Order dated June 9, 2016, plaintiff's Motion to Re-Open this matter was denied. Dkt. No. 14. Plaintiff appealed, and the United States Court of Appeals for the Fourth Circuit reversed, in part, vacated, in part, and remanded this matter. Appeal No. 16-6830.

Pursuant to an Order dated July 2, 2018, plaintiff's Bivens claims were dismissed, as were most of the defendants. Dkt. No. 66. The only remaining defendant, Acting Secretary of the Army Ryan D. McCarthy, filed a Motion to Dismiss and a separate Motion for Summary Judgment, as well as a memorandum of law and supporting exhibits. Dkt. Nos. 50-54. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials

---

[1] Although it appears, on the face of plaintiff's complaint, that he is only asserting a claim pursuant to Bivens, plaintiff also states, in the complaint, that he "seeks review of the Military Review Board's decision" and he seeks back pay from the "date of his present for duty status until the date of correction of his [Army] records." Dkt. No. 1. Thus, plaintiff's complaint is construed liberally as also bringing claims under the APA and for wrongful discharge.

pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. No. 52. Plaintiff filed a response and Defendant McCarthy filed a reply. Dkt. Nos. 58, 61. This matter is now ripe for disposition. For the reasons that follow, defendant's Motion to Dismiss will be denied, as moot, and defendant's Motion for Summary Judgment will be granted.

## I. Motion to Dismiss

In plaintiff's response to defendant's Motion to Dismiss, plaintiff states that he "requests this Court to apply the APA's jurisdiction 'exclusively' to his Declaratory and Injunctive relief" and that he waves "compensatory relief; ... punitive relief, ... and Equitable relief that may exceed $10,000...." Dkt. No. 58. Construed liberally, these statements will be taken as a Motion for Voluntarily Dismissal of all of plaintiff's remaining claims, except for his claim arising under the APA, pursuant to Fed. R. Civ. P. 41(a). This motion will be granted. Thus, the only remaining claim is plaintiff's APA claim. Because defendant's Motion to Dismiss for lack of jurisdiction only raises arguments to dismiss plaintiff's non APA claims, it will be denied, as moot.

## II. Motion for Summary Judgment

### A. Background

Plaintiff began his service in the Army on July 29, 1998. Admin. Rec. at 61. On December 17, 1998, plaintiff's status was changed from present for duty to absent without leave (AWOL). Id. at 51. On January 4, 1999, plaintiff's status was changed from AWOL to present for duty. Id. at 50. Accordingly, plaintiff was charged with being AWOL, in violation of the Uniform Code of Military Justice ("UCMJ"), and his charge was adjudicated through a non-judicial procedure ("NJP"), also known as an Article 15. There is no direct documentation in the record that plaintiff received an Article 15 for his first AWOL charge; however, as stated in further detail below, the record indirectly establishes that he did. Id. at 28.

Plaintiff was again AWOL from March 8, 1999, until August 26, 1999. Id. at 53-57; 40. Specifically, on March 8, 1999, plaintiff's status was changed from present for duty to AWOL and then from AWOL to dropped from rolls, and it was noted that plaintiff "left while on extra-duty serving punishment for an Article 15." Id. at 48-49. On March 10, 1999, plaintiff was charged with AWOL in violation of the UCMJ for a second time. Id. at 46-47. On July 26, 1999, plaintiff was apprehended by civilian authorities in Florida, and he was returned to military control on August 27, 1999. Id. at 5.

On September 1, 1999, plaintiff was informed of the second AWOL charge against him. Id. at 45. This AWOL charge was adjudicated through the judicial process as the charge sheet recommended that plaintiff be tried by a special court-marshal empowered to adjudge a bad conduct discharge. Id. at 43-45.

On September 1, 1999, plaintiff signed a request for discharge in lieu of court-martial which states, in relevant part, the following.[2]

> I, Paul Luxama, ... hereby voluntarily request discharge in lieu of trial by courts-martial under AR 635-200, Chapter 10. I understand that I may request discharge in lieu of trial by courts-martial because of the following charge(s) which (has) (have) been preferred against me under the Uniform Code of Military Justice, which authorize(s) the imposition of a bad conduct or dishonorable discharge:
>
> Article 86 UCMJ AWOL O/A 8 March 1999 to O/A 27 August 1999
>
> I am making this request of my own free will and have not been subjected to any coercion whatsoever by any person. I have been advised of the implications that are attached to it. By submitting this request for discharge, I acknowledge that I

---

[2] Plaintiff often refers to his "Article 15s" in the plural and alleges, in the complaint, that his two AWOL charges "were considered to be Article 15(s) [sic]." Plaintiff appears to be conflating his charges with Article 15 proceedings. The record clearly establishes that plaintiff was charged twice with AWOL and that the first AWOL charge was adjudicated through the Article 15 procedure. The second AWOL charge was not adjudicated pursuant to Article 15, but rather began the process of adjudication pursuant to the judicial process and resulted in a discharge in lieu of court-martial. Finally, there is no evidence that his AWOLS were "taken" as Article 15s.

3

understand the elements of the offense(s) charged and am guilty of the charge(s) against me or of (a) lesser included offense(s) therein contained which also authorize(s) the imposition of a bad conduct or dishonorable discharge. Moreover, I hereby state that under no circumstances do I desire further rehabilitation, for I have no desire to perform further military service.

Prior to completing this form, I have been afforded the opportunity to consult with appointed counsel for consultation. I have consulted with counsel for consultation who has fully advised me of the nature of my rights under the Uniform Code of Military Justice, the elements of the offense(s) with which I am charged, any relevant lesser included offense(s) thereto, and the facts that must be established by competent evidence beyond a reasonable doubt to sustain a finding of guilty; the possible defenses which appear to be available at this time; and the maximum permissible punishment if I am found guilty. Although I have been furnished legal advice, this decision is my own. ...

I understand that, if my request for discharge is accepted, I may be discharged under conditions which are other than honorable and furnished an Under Other Than Honorable Discharge certificate. I have been advised and understand the possible effects of an Other Than Honorable Discharge and that as a result of the issuance of such discharge, I will be deprived of many or all Army benefits, that I may be ineligible for many or all benefits administered by the Veteran's Administration, and that I may be deprived of my rights and benefits as a veteran under both Federal and State law. I also understand that I may expect to encounter substantial prejudice in civilian life because of an Under Other Than Honorable Discharge. I further understand that there is no automatic upgrading or automatic review of a less than honorable discharge by any Government agency or the Army Board for the Correction of Military Records. I understand that if I desire a review of my discharge, I must apply to either the Army Discharge Review Board or the Army Board for Correction of Military Records, and that the act of consideration by either board does not imply that my discharge will be upgraded.

Id. at 38-39. Plaintiff also signed a memorandum which stated, in relevant part:

I have been advised by my defense counsel that at the present time the government has not received the necessary documentation and/or records with which to obtain a conviction by a court-martial. ... Further, I have been advised by my military counsel that he cannot completely advise me without these records. I realize my defense counsel is limited by the few records that are available as to the advice he can give. Nevertheless, knowing all this to be true, I waive all defenses that may have become known had my defense counsel been able to review my records.

Knowing all this to be true, I knowingly, willingly, and voluntarily declare that I was absent without leave from the U.S. Army from O/A 8 March 1999 to O/A 27 August 1999. I make this admission for administrative purposes

4

> only so I may process out of the Army and realize in doing so I may be
> given an under other than honorable conditions discharge.
>
> I further declare that my military defense counsel has explained to me to my
> complete understanding and satisfaction, all the legal and social
> ramifications of that type of discharge and what it will mean to me in the
> future.

Id. at 42. Plaintiff's request for discharge was approved on July 14, 2000, and he was discharged from the Army on September 27, 2000, under other than honorable conditions, and was credited with one year, seven months, and nineteen days of active service. Id. at 6, 33, 31, 35.

On August 10, 2011, plaintiff applied to the Army Discharge Review Board ("ADRB") to have his "character of service, separation code, and ... reentry code upgraded." Id. at 31. Plaintiff requested these corrections because he was allegedly told, at the time of his separation, that he "could have [his discharge] upgraded after two years" and that "after 'x' amount of years the upgrade would be automatic." Id. The ADRB denied plaintiff's application on February 24, 2012, determining that plaintiff

> was charged with the commission of an offense punishable under the [UCMJ] with
> a punitive discharge. [He] consulted with defense counsel, and voluntarily in
> writing, requested separation from the Army in lieu of trial by court-martial. In
> doing so, [he] admitted guilt to the stipulated or lesser-included offenses under the
> UCMJ.
>
> [A]ll the requirements of law and regulation were met and the rights of [plaintiff]
> were fully protected throughout the separation process. It is also noted that the
> characterization of service for this type of discharge is normally under other than
> honorable conditions and that [plaintiff] was aware of that prior to requesting
> discharge. By the misconduct (i.e., AWOL x 2), [plaintiff] diminished the quality
> of his service below that meriting a general, under honorable conditions or a fully
> honorable discharge.
>
> ***
>
> [Plaintiff] contends being advised that after a certain number of years, an upgrade
> would be automatic. The U.S. Army does not have, nor has it ever had, a policy to
> upgrade a discharge based on time elapsed since the discharge. Each case is
> decided on its own merits based on all factors contained in the OMPF or as

submitted by the applicant. Changes may be warranted if the Board determines that the characterization of service or the reason for discharge or both were improper or inequitable.

Id. at 29.

On April 10, 2014, plaintiff appealed the ADRB decision to the Army Board for the Correction of Military Records (ABCMR), seeking an upgrade of the characterization of his discharge and removal of the Article 15 from his records. Id. at 25-26. Plaintiff stated that (1) the ADBR unlawfully relied on Article 15s, (2) his Fifth and Sixth Amendment rights were violated, (3) he was advised by counsel that he would have an opportunity to upgrade his discharge after two years, and (4) mental counseling was not done prior to his discharge. Id. at 19. On December 4, 2014, the ABCMR denied plaintiff's application. Id. at 19-24. On January 5, 2015, plaintiff asked the ABCMR to reconsider its decision because (1) there was no documentation of his first AWOL in his records, but rather "he merely returned late from vacationing," and (2) his counsel was ineffective because he failed to investigate plaintiff's record to discover the missing documentation of his first AWOL, which could have led to lesser punishment from a court martial, and he informed plaintiff that his discharge would be automatically upgraded after two years. Id. at 14-16. On September 17, 2015, the ABCMR denied plaintiff's request for reconsideration of their decision. Id. at 3. Plaintiff now seeks review of the ABCMR's decision.

**B. Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). Decisions of the ABCMR are subject to judicial review,[3] Chappell v. Wallace, 462 U.S. 296, 303 (1983), and

---

[3] To the extent plaintiff challenges the underlying actions taken regarding his separation, those are not reviewable by this Court.

can be set aside if they are "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Portner v. McHugh, 395 Fed.Appx. 991, 992 (4th Cir.2010) (per curiam).

> The APA confines judicial review of executive branch decisions to the administrative record of proceedings before the pertinent agency. As such, there can be no genuine issue of material fact in an APA action. In such actions, the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.
>
> ***
>
> In determining whether agency action was arbitrary or capricious, the court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made. Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made.
>
> The APA also includes the same kind of harmless-error rule that courts ordinarily apply in civil cases. As incorporated into the APA, the harmless error rule requires the party asserting error to demonstrate prejudice from the error. If a party fails to carry that burden, the agency's decision must be upheld.

Downey v. U.S. Dep't of the Army, 110 F. Supp. 3d 676, 685–86 (E.D. Va. 2015), aff'd sub nom. Downey v. United States Dep't of the Army, 685 F. App'x 184 (4th Cir. 2017) (internal quotation marks, citations, and alterations omitted). The Secretary of the Army, acting through the ABCMR, "may correct any military record ... when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) Judicial review of the ABCMR's decisions are done under an "unusually deferential application of the arbitrary or capricious standard of the [APA]." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (internal quotation marks and citations omitted). "A rational connection between the facts found and the choice made is all that is necessary to sustain its decision." Caez v. United States, 815 F. Supp. 2d 184, 189 (D.D.C. 2011) (internal quotation marks and citation omitted). "Such deference ensures that the courts function neither as a super correction board, nor as a forum for appeals by every soldier

dissatisfied with a military personnel action or decision, a result that would destabilize military command and take the judiciary far afield of its area of competence." Downey, 110 F. Supp. 3d at 686–87 (internal quotation marks, citations, and alterations omitted). Finally, "a party seeking review ... bears the burden of overcoming the strong, but rebuttable, presumption that administrators of the military ... discharge their duties correctly, lawfully and in good faith. [I]t is also presumed that governmental records are accurate." Jenkins v. Speer, 258 F. Supp. 3d 115, 124 (D.D.C. 2017) (internal quotation marks and citations omitted).

### C. Analysis

In the complaint, plaintiff makes a general statement that he seeks review of the ABCMR decision. It appears as though plaintiff claims that the ABCMR decision was incorrect because (1) his counsel was ineffective (2) the decision improperly relied on his first AWOL and Article 15, and (3) he was not provided counseling before his separation from the Army.

#### i. Ineffective Assistance of Counsel

Plaintiff asserts that counsel appointed to assist him with the second AWOL charge was ineffective because counsel (1) misinformed him that his discharge would be upgraded automatically after two years, and thus his "acceptance of [the] discharge was not done completely knowingly and voluntarily," and (2) failed to investigate plaintiff's record to determine that there was missing information regarding the first AWOL charge.[4]

The ABCMR denied these claims, stating that

---

[4] In his response, plaintiff also argues that he involuntarily signed his request for discharge in lieu of courts-marital and the accompanying waiver forms because he signed them hastily, counsel never explained the forms to him, and he was young and "poor." Plaintiff also claims that the "military lawyer failed to object," without any further explanation. The record establishes that plaintiff did not present any of these arguments to the ABCMR. Accordingly, they are not properly before this Court and will not be considered. Unemployment Comp. Comm'n of Alaska v. Aragon, 329 U.S. 143, 155 (1946).

8

> [Plaintiff] was ... AWOL from period 8 March through 27 August 1999. On 1 September 1999, charges were preferred against him for this period of AWOL.
>
> On 1 September 1999, he consulted with counsel and was advised of the basis for the contemplated trial by court-martial, the maximum permissible punishment authorized under the UCMJ, the possible effects of an under other than honorable conditions discharge, and the procedures and rights available to him. ...
>
> Subsequent to receiving legal counsel, [plaintiff] voluntarily requested discharge for the good of the service in lieu of trial by court-martial under the provisions of Army Regulation 635-200 (Personnel Separations – Enlisted Personnel), chapter 10. He acknowledged that:
>
> - he could request discharge for the good of the service because charges had been preferred against him under the UCMJ that authorized the imposition of a bad conduct or dishonorable discharge
> - he was guilty of the charge against him or a lesser-included offense therein contained that also authorized the imposition of a bad conduct or dishonorable discharge
> - under no circumstances did he desire further rehabilitation for he had no desire to perform further military service
> - he understood he could be discharged under conditions other than honorable
> - as a result of such a discharge, he would be deprived of many or all Army benefits and might be ineligible for many or all benefits administered by the Department of Veterans Affairs
> - he could be deprived of his rights and benefits as a veteran under Federal and State laws
> - he could expect to encounter substantial prejudice in civilian life because of an under other than honorable conditions discharge

Admin. Rec. at 20-21. The ABCMR also noted that the "U.S. Army has never had a policy where a discharge was automatically upgraded." Id. at 23. On reconsideration, the ABCMR found that "[t]here is no evidence in the available records and [plaintiff] did not provide any evidence to support his contention that his voluntary request for discharge in lieu of trial by court martial was improperly administered or that he was poorly advised by counsel." Id. at 9.

Plaintiff's reliance on Tippett v. United States, 28 F. App'x 942, 942 (Fed. Cir. 2001), Fairchild v. Lehman, 814 F.2d 1555 (Fed. Cir. 1987), and White v. Sec'y of Army, 878 F.2d 501

9

(D.C. Cir. 1989) is misplaced because, in each of those cases, the evidence established that the service member was given erroneous advice by counsel.[5] Here, the ABCMR found that "[t]here is no evidence in the available records and [plaintiff] did not provide any evidence to support his contention that his voluntary request for discharge in lieu of trial by court martial was improperly administered or that he was poorly advised by counsel." This finding is substantially supported by the evidence, including forms signed by plaintiff in which he confirms that (1) he was not coerced into voluntarily requesting a discharge in lieu of courts-martial; (2) he had consulted with counsel and counsel advised him of his rights and the consequences of the decision he was making; (3) he understood that he could be discharged under other than honorable conditions, and the consequences of such a discharge; (4) he understood that there is no automatic upgrading or automatic review of a less than honorable discharge by any Government agency or the ABCMR; and (5) he was advised that the government did not have all the documents, at that time, to obtain a conviction by court-martial, and that his counsel could not completely advise him without these documents, but that he wished to waive all defenses that may have become known through the missing records.

Plaintiff also argues that the record does not disprove his claims that his counsel was ineffective; however, this is not the standard under which the ABCMR decision is reviewed. Rather, the ABCMR decision will be upheld as long as there is "[a] rational connection between the facts found and the choice made." Accordingly, based on the record, the ABCMR decision regarding plaintiff's ineffective assistance of counsel claim is not "arbitrary, capricious, contrary to law, or unsupported by substantial evidence."

---

[5] Plaintiff's reliance on Henry v. Dep't of Navy, 886 F. Supp. 686 (E.D. Ark. 1995) is misplaced because it was reversed on appeal. See Henry v. U.S. Dep't of Navy, 77 F.3d 271 (8th Cir. 1996).

### ii. Consideration of First AWOL and Article 15

Plaintiff also argues that the ABCMR improperly considered his first AWOL and Article 15 because there was no documentation of his first AWOL or Article 15.[6] The ABCMR denied this claim, finding that

> [t]he available evidence shows [plaintiff] was AWOL from 17 December 1998 to 3 January 1999 and he received an Article 15 for his first period of AWOL; however, that document is not contained in the available records. His Official Military Personnel File (OMPF) does contain a DA Form 4187, dated 8 March 1999, signed by an authorized official, verifying the applicant went AWOL during the punishment phase of a Field Grade Article 15. His OMPF does not contain any DA Forms 2627 (Record of Proceedings under Article 15, Uniform Code of Military Justice (UCMJ)).[7]
>
> [Plaintiff] was also AWOL from period 8 March through 27 August 1999. On 1 September 1999, charges were preferred against him for this period of AWOL.

Admin. Rec. at 20 (footnote added). The ABCMR also determined that plaintiff's Article 15 could not be removed from his records because it was not in his records, pursuant to Army regulations. Id. at 23. In addition, the ABCMR determined that plaintiff's

> contention that the ADRB improperly based its decision on an Article 15 is without merit. In reviewing [his] request for an upgrade of his discharge, nothing

---

[6] In the complaint, plaintiff argues that (1) because the formal documents related to the Article 15 are missing, there is no proof that he was afforded counsel or that he appealed the NJP; (2) he was not, in fact, provided the opportunity to consult with counsel for the Article 15 and that he was not put on notice of the Article 15; and (3) the record establishes that, after investigation of the first AWOL, plaintiff was not offered or rejected an NJP, and thus, there was a "fraudulent misrepresentation of the facts ... because the board's decision hinged on some misconduct by [plaintiff] involving Article 15's [sic]." Dkt. No. 1. In addition, in his response, plaintiff argues that a court reporter was not present for his court martial proceeding (even though the record establishes that there was never a court-martial proceeding). Because the record establishes that plaintiff did not present any of these arguments to the ABCMR, they are not properly before this Court and will not be considered. Aragon, 329 U.S. at 155.

[7] The ABCMR explained that the DA Forms 2627 were not in plaintiff's records because "for Soldiers who are at the rank of specialist or corporal and below (prior to punishment) the original will be filed locally in unit NJP or unit personnel files. Such locally filed originals will be destroyed at the end of 2 years from the date of imposition of punishment or on the Soldier's transfer to another General Court-Martial Convening Authority, whichever occurs first." Id. at 22.

precluded the ADRB from considering references to an NJP contained in his record. Further, the record shows the ADRB considered his entire record in making its decision.

Id.

On reconsideration, the ABCMR held that that "the lack of the DA Form 2627 following his initial instance of AWOL does not suggest there is no documentation of his incidents of AWOL, which are very well documented in his military records," and "[h]is initial discharge packet and subsequent requests to upgrade his discharge did not hinge solely on his receipt of documented NJP or lack thereof, but included a consideration of his overall length and qualify [sic] of service combined with his very well documented counts of AWOL." Id. at 8.

Plaintiff's reliance on US v. Mack, 9 M.J. 300 (1980), and U.S. v. Rimmer, 39 M.J. 1083 (1994), is misplaced, as these cases deal with the admission of prior Article 15s into evidence for sentencing subsequent to a court-martial. In addition, U.S. v. Williams, 37 M.J. 972 (1993) is inapposite because it deals with the admission of a prior adjudication of guilt into evidence during the guilt phase of a court-martial. Here, plaintiff's charges never went to a court-martial, and thus, his prior Article 15 was never introduced as evidence. Accordingly, the ABCMR decision as to plaintiff's claim regarding the use of his previous Article 15 is not "arbitrary, capricious, contrary to law, or unsupported by substantial evidence."

### iii. Counseling

In the complaint, plaintiff alleges that there was no mental counseling done prior to his discharge, and therefore the ABCMR's decision was a violation of "federal statutes and constitutional law." In his response to the Motion for Summary Judgment, plaintiff specifies that "Army Regulations 635-200," Chapter 11-4 states that

> before initiating separation action on a soldier, commanders will ensure that the soldier receives adequate counseling and rehabilitation. ... Counseling and

> rehabilitation requirements are important when entry-level performance and conduct are the reason for separation. Because military service is a calling different from any civilian occupation, a soldier should not be separated when this is the sole reason <u>unless</u> there have been efforts at rehabilitation.

Dkt. No. 58 (emphasis added by plaintiff). Plaintiff argues that there is no evidence that his entry level performance was considered for rehabilitation prior to his separation. Id.

The ABCMR found that plaintiff acknowledged that "under no circumstances did he desire further rehabilitation for he had no desire to perform further military service" and that soldiers are considered to be "entry level status [if they have] completed no more than 180 days of continuous active service. [Plaintiff] ... completed 1 year, 7 month [sic], and 19 days of net active service." Admin. Rec. at 21, 23. Because plaintiff waived his right to rehabilitation and stated that he had no desire to perform further military service, the ABCMR's decision is not "arbitrary, capricious, contrary to law, or unsupported by substantial evidence."

### III. Conclusion

For the reasons stated above, plaintiff's Motion for Voluntary Dismissal will be granted, and defendant's Motion to Dismiss will be denied, as moot. In addition, because defendant has established that he is entitled to summary judgment, his Motion for Summary Judgment will be granted, and plaintiff's Motion in Opposition to the Motion to Dismiss, or, in the Alternative Summary Judgment will be denied. An appropriate Order shall issue.

Entered this 16th day of July 2018.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia

13